## MOORE v. CHAMBERLAIN.

(Court of Civil Appeals of Texas. Ft. Worth. June 15, 1912. Rehearing Denied Dec. 14, 1912.)

1. APPEAL AND ERROR (§ 1097*)—LAW OF CASE—DECISION ON FORMER APPEAL.

The law of the case on the former appeal must be followed on a subsequent appeal to the Court of Civil Appeals, unless reversed or modified by the Supreme Court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4358–4368; Dec. Dig. § 1097.*]

2. APPEAL AND ERROR (§ 1198*)—REMAND— DUTY OF TRIAL COURT.

The trial court must obey the directions of the Court of Civil Appeals on remand.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4668; Dec. Dig. § 1198.*]

3. APPEAL AND ERROR (§ 724*)—ASSIGNMENTS OF ERROR—SUFFICIENCY.

A purported assignment of error that a $1,-600 note is usurious because given for a $1,500 debt was not an assignment of error, but merely a proposition, since it did not complain of any ruling.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2997–3001, 3022; Dec. Dig. § 724.*]

---

Appeal from District Court, Tarrant County; W. T. Simmons, Judge.

Action by Hester E. Chamberlain against Worth Moore. From a judgment for plaintiff, defendant appeals. Affirmed.

Hunter & Hunter, of Ft. Worth, for appellant. Wm. J. Berne, of Ft. Worth, for appellee.

SPEER, J. This case has been once before appealed and will be found reported under the style of Chamberlain v. Trammell in 131 S. W. 227. After a reversal by the Court of Civil Appeals for the Sixth District, the cause was tried on special issues and a judgment rendered for the plaintiff, Hester E. Chamberlain, for title to the land in controversy, and that the defendant, Worth Moore, have and recover from the plaintiff the sum of $2,578.78 with certain interest, together with foreclosure of a lien on the land to secure such payment. The statement of the case made in the report referred to is sufficiently full for the purposes of this appeal and need not be repeated here.

The following are the special issues submitted to the jury, together with the answers thereto:

"Gentlemen of the jury:

"(1) Was the land the homestead of Chamberlain and wife at the date of the deed to Carson? Answer: Yes.

"(2) Did Chamberlain and wife, when they made said deed to Carson, intend it to be an absolute conveyance of the land to Carson? Answer: No.

"(3) Did Wm. Chamberlain and wife, when they made the deed to Carson, intend it to be merely a mortgage to secure the loan of the $1,500 note executed by Carson to Chamberlain? Answer: Yes.

"(4) Find from the evidence and say whether there was an agreement between the Chamberlains and Carson, made at the time of the deed to Carson, that if the Chamberlains paid off and returned the $1,500 note to Carson when it matured, Carson was to reconvey the land to the Chamberlains? Answer: Yes.

"(5) Did Carson know at the time he accepted said deed that the Chamberlains, intended it only as a mortgage to him as security to him for the payment of the $1,500 expressed in the note? Answer: Yes.

"(6) Who sold said $1,500 note to A. P. Luckett? Answer: Joe Meyer.

"(7) What did Luckett pay for it? Answer: $1,500.

"(8) Did Luckett have any notice at the time he bought the $1,500 note that the sale and conveyance of the land by the Chamberlains to Carson was a sham and intended only as a mortgage on Chamberlain's homestead? Answer: No.

"(9) Did Luckett buy the note in good faith? Answer: Yes.

"(10) For whom did Meyer act as agent when he sold the note to Luckett? Answer: The Chamberlains, Wm. Chamberlain and his wife, the plaintiff.

"(11) Did Meyer make any representations to Luckett at the time he sold the note; if so, what were they? Answer: That the note was good and all right and a vendor's lien on the land.

"(12) Did Luckett buy the note himself or for Lousue Moore? Answer: Lousue Moore.

"(13) Did Lousue Moore have any notice or knowledge that the sale and conveyance of the land from Chamberlain to Carson was a sham, or was only intended as a mortgage? Answer: No.

"(14) What, if anything, did Lousue Moore pay for the note, and for whom did she buy it? Answer: $1,500; for herself.

"(15) Did she buy it in good faith? Answer: Yes.

"(16) Was she or not an innocent purchaser for value before maturity, without notice of any defect or vice in the sale and conveyance or in the note? Answer: Yes.

"(17) Did Lousue Moore buy the $1,500 note for her ward, Worth Moore's estate? Answer: Yes.

"(18) Did Worth Moore have any notice or knowledge of any defect or vice in said $1,600 note, such as pleaded by plaintiff in her amended and supplemental petition at the time his guardian, Lousue Moore, bought her note, or at the time he accepted it in settlement with his guardian? Answer: No. Unless the possession of her tenants at the time he bought gave him notice of Mrs. Chamberlain's claim.

"(19) Was or not the $1,600 note and deed of trust given in lieu and in extension of the $1,500 note hereinbefore mentioned? Answer: It was.

"(20) What was the extra $100 for as contained in $1,600 note? Answer: Commission to A. P. Luckett.

"(21) Who was to have the $100, and for what was he to have it? Answer: Mr. A. P. Luckett was to have it for making the extension.

"(22) Was the land ever sold by Luckett, the trustee, under the deed of trust? If so, when and where was it sold, and who bought it at the sale? Answer: It was sold by Mr. Luckett at the courthouse door of Tarrant county, Tex., May 6, 1902, and was bought in by Worth Moore.

"(23) Did Lousue Moore request A. P. Luckett to sell the land to pay the $1,600 note after the same became due? Answer: Yes.

"(24) What notice, if any, did A. P. Luckett give of said sale? Answer: By posting three notices in writing at three public places in Tarrant county, Tex.; one being at the courthouse door.

"(25) Did he, Mr. Luckett, or not, give W. M. Trammell written notice of said sale before it was made? If so, when and where?

Answer: He did at the time of posting notices in Ft. Worth, Tex.

"(26) When did Luckett first know that Hester E. Chamberlain claimed that the deed to Carson was a mortgage? Answer: 1896.

"(27) When did she first make her claim to an interest in the land to A. P. Luckett? Answer: 1896.

"(28) Did the plaintiff, Hester E. Chamberlain, ever recognize the validity of the $1,600 note, and inquire of Luckett whether Trammell was. keeping the interest paid up on it or not? If so, when did she first mention the debt to A. P. Luckett? Answer: Yes, in 1896.

"(29) Did William Chamberlain or not know of the execution of the $1,600 note to B. K. Carson, and did he sign it with Trammell? Answer: He did.

"(30) In what year and in what month in the year did Wm. Chamberlain die? Answer: July 11, 1895.

"(31) Did he leave any will? Answer: No.

"(32) Was there ever any administration of his estate? Answer: No.

"(33) Was possession of said land in writing or otherwise given to A. P. Luckett, as trustee, by Mr. Trammell? If so, when? Answer: Yes, in writing in October, 1895.

"(34) Did or did not A. P. Luckett, as trustee, make and deliver a deed of conveyance of the land to Worth Moore? Answer: He did.

"(35) After maturity of said $1,600 note, did Mrs. Lousue Moore request said Luckett to sell said land as trustee under said deed of trust? Answer: Yes.

"(36) Did said Luckett as trustee advertise said sale? And if you find that he did, then say how and in what manner he advertised it and how long before the day of sale. Answer each of these questions plainly and fully. Answer: He did. He advertised it by posting three notices in three public places in Tarrant county, Tex, one of them being at the courthouse door, more than 20 days prior to the date of sale.

"(37) Did Mr. Luckett or not hand a copy of said written notice to W. M. Trammell, and, if so, about what time? Answer: He did, about the time the notices of sale were posted.

"(38) Was Trammell or not at the time claiming the land as his own? Answer: Yes.

"(39) Had Trammell ever by writing turned over possession of the land to Luckett? If so, when and for what consideration? Answer: Yes, October, 1895, for the consideration stated in the writing.

"(40) Did Mr. Luckett advertise the sale under the deed of trust in a newspaper? Answer: No.

"(41) When did the plaintiff personally cease to occupy the land? Answer: In January or February, 1893.

"(42) When did the plaintiff first learn of the conveyance of the land by Carson to Trammell, and who told her first about it?

Answer: At the time it was made. Mr. Chamberlain told her about it.

"(43) Did she or not ever tell A. P. Luckett that if he wanted the money on the $1,600 note that she and her husband would raise it some way? If so, when was the conversation with Luckett? Answer: Yes, in 1896.

"(44) Did she or not tell Luckett that she was the owner of the land in controversy and would pay him the money on the note he held against it, if he was bound to have it? If so, when was this conversation? Answer: She did, in 1896.

"(45) Was she or not informed by B. J. Houston, in his law office at the time she and her husband executed the deed to Carson for the land, that the sale must be an absolute conveyance to Carson made in good faith? Answer: Yes.

"(46) Did Houston then have a deed signed by Carson in his possession, wherein Carson reconveyed the land to the Chamberlains, to be delivered if they paid the $1,500 note, and which deed Houston agreed to place of record in case Carson tried to sell the land? Answer: He did.

"(47) Did the plaintiff or her husband ever, after the conveyance to Carson, render said land for taxation? Answer: No.

"(48) Did they or either of them, after the conveyance to Carson, pay any taxes on said land? Answer: No.

"(49) Find from the evidence whether or not Worth Moore bought the note and the land in good faith at trustee's sale for a valuable consideration without any notice that the sale from Chamberlains to Carson was a sham and only intended as a mortgage? Answer: His bid for the land canceled the $1,600 note in good faith without notice of Mrs. Chamberlain's claim unless the possession of her tenants at the time he bought gave him notice of her claim.

"(50) Find from the evidence who has been in possession of said land since Worth Moore bought it at trustee's sale? Answer:. Worth Moore.

"(51) Find from the evidence and state whether the plaintiff in this case ever qualified as the survivor of the community estate of herself and deceased husband? Answer: No.

"(52) Find from the evidence whether when Wm. Chamberlain died he left any children surviving, and if so give their names and ages at the date of his death? Answer: Yes, three: Iva Trammell, age 25 years; Wm. Chamberlain, age 23 years; and Nellie Chamberlain, age 21 years.

"(53) Find from the evidence whether any or all of the children of Wm. Chamberlain and the plaintiff ever resided with the plaintiff after Wm. Chamberlain's death? Answer: Yes; Nellie Chamberlain for a short time.

"(54) Find from the evidence whether any of the children surviving Wm. Chamberlain ever depended upon the plaintiff for their

support and maintenance after the death of Wm. Chamberlain? Answer: No.

"(55) Find from the evidence how much was due on the $1,600 note at the date of the trustee's sale? Answer: $1,650.

"(56) Find from the evidence how much taxes and interest Worth Moore and his agents had paid on this land, and for what years? Answer: $368.78 taxes paid for years 1895 to 1910, inclusive, all that was due.

"(57) Find from the evidence how much interest accumulated on said $1,600 up to this date, less the amount of rents paid by tenants to Worth Moore? Answer: $360.

"(58) How much is a reasonable attorney's fee for defendant's attorney in this case? For foreclosure on note? Answer: $200.

"(59) Did Mr. and Mrs. Chamberlain have tenants in possession of said land continuously up to the time Trammell surrendered possession to Luckett in writing, which was in October, 1895? Answer: Yes.

"(60) Did the Chamberlain children tell their mother, Mrs. Chamberlain, after the death of their father, that she could use the land, and occupy the land, for the balance of her life? Answer: Yes."

At page 58 of appellant's brief it is stated: "At the time of the trial of this cause June 12, 1911, there was in reality but one question, and that was whether the right of Mrs. Chamberlain to redeem the land in controversy from the vendor's lien secured by the deed of trust was barred by the statute of limitation of four years, when her suit to redeem was filed March 26, 1909, and the special findings of the jury and the documentary evidence read to them established conclusively that her cause of action to redeem was clearly barred by the four years statute of limitation."

[1] Whether the issues were thus limited or not, we have concluded that each of the questions raised by appellant on this appeal was decided adversely to him on the former appeal, and we conceive it to be our duty to follow the law as announced in that decision until the same has been reversed or modified by the Supreme Court.

[2] On the last trial the trial court could not do otherwise than to obey the orders of the Court of Civil Appeals remanding the case. Its decision was the law of the case, and, without determining whether as original propositions the questions were rightly decided or not, we follow that court and decline to enter into a reconsideration of the questions presented, all of which were expressly or necessarily decided on the former appeal.

[3] Appellee has presented certain cross-assignments of error. The first cross-assignment is not an assignment of error at all, since it does not complain of any ruling or action whatever of the court, but is in substance and in form merely a proposition of

law based upon an assumed state of the evidence. It is as follows: "The $1,600 note is usurious because it was given for a debt of only $1,500, the extra $100 in the note being given for the extension of said debt."

The second cross-assignment is somewhat more specific, in that it alleges error in rendering judgment for appellant for any amount of money whatever upon the assertion that the $1,600 note and all taxes had been fully repaid to appellant. No statement follows this assignment, but we have read the "argument" to which reference is made, in the hope of finding there a statement of the evidence pertinent to the assignment. We have been unable to find anywhere in appellee's brief a statement from the record which will show that the judgment rendered by the court embraced any usurious interest whatever. There is nothing to show that the court did not find under the facts that the $100, the inclusion of which appellee insists made the transaction usurious, was not paid by Trammell to Luckett as his broker's fee for the agreed extension.

The judgment is in all things affirmed.